IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CR-76-FL

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| NEWTON A. SHEARER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Motion to Suppress [DE-23, 24, 40] filed by Defendant Newton A. Shearer ("Defendant"). The motion was referred to this court and is considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); FED. R. CRIM. P. 59(b)(1). The government has responded to the motion [DE-26, 42] and the court held a hearing on December 20, 2010 to further develop the record. Accordingly, the motion is ripe for review. For the reasons stated below, it is recommended that Defendant's motion be denied.

## PROCEDURAL BACKGROUND

On March 17, 2010, a grand jury sitting in the Eastern District of North Carolina returned a true bill of indictment containing six counts against Defendant. [DE-14]. The indictment charges Defendant with the following offenses: being an alien illegally in the United States in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(5) and 924 (count one); illegal reentry into the United States after having been deported in violation of 8 U.S.C. §§ 1326(a) and (b)(2) (count two); document fraud in violation of 18 U.S.C. § 1546(a) (count three); possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (count four), possession of a firearm in furtherance of a drug trafficking crime in violation of 18

U.S.C. § 924(c)(1)(A) (count five), and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924 (e)(1) (count six). *Id.* Defendant has filed a motion seeking the suppression of all evidence seized following the execution of a search warrant.[1] At the suppression hearing, Defendant presented no witness testimony. The government presented the testimony of Joseph Delpizzo ("Detective Delpizzo"), a Detective with the Fayetteville Police Department and Steve Cardwell ("Agent Cardwell"), a Special Agent of the Immigration and Customs Enforcement ("ICE"). Transcript of Hearing pp. 2, 48 ("Tr.").

## STATEMENT OF THE FACTS

Defendant challenges a search warrant issued in this case by a North Carolina magistrate. Defendant contends that the statements contained in the search warrant affidavit fail to demonstrate sufficient probable cause to support issuance of the search warrant.

A.  Contents of the Search Warrant Affidavit[2]

According to the search warrant affidavit, on June 17, 2009 Detective Delpizzo was advised by Sergeant Bahler of the Fayetteville Police Department that he, Bahler, met with an informant ("CI#2") and was advised that there was narcotic activity occurring at 3230 Rogers Drive in Fayetteville, North Carolina.[3] The informant advised that the occupant of 3230 Rogers Drive was Christopher Antonio Daniels, and was a black male who had been convicted of

---

[1] Defendant has moved also to suppress statements he made purportedly as a result of the search and subsequent arrest. [DE-23]. The government has agreed not to use the statements in its case-in-chief. [ DE-26, 42]. No argument was heard on the suppression of these statements during the hearing and the issue is not addressed herein.

[2] Search Warrant Application in the Matter of 3230 Rogers Drive, Fayetteville, North Carolina. [DE-24-1]; Hearing Ex. 1. [DE-46].

[3] Detective Delpizzo referred to this individual in his hearing testimony as confidential informant #2 although the parties' briefing refers to the informant as confidential informant #1).

2

trafficking marijuana and has previously been deported from the United States due to the conviction. The informant also advised that Daniels had at least two firearms inside the residence at 3230 Rogers Drive, a sawed off shotgun and a 9 millimeter handgun. In addition, the informant advised that Daniels uses an alias of Orvin Phillips but that he is also known as "Tone" or "Tony".

Detective Delpizzo then reviewed the Public Works Commission database which indicated that the account holder for the utilities at 3230 Rogers Drive, Fayetteville, North Carolina was Orvin E. Phillips. The database showed that the utilities account for the utilities at 3230 Rogers Drive was connected in Phillips' name on July 6, 2007. The database provided Phillips' biographical information.[4]

On June 17, 2009, Detective Delpizzo reviewed the Forsyth County Sheriff's Office booking information and photograph of Christopher Antonio Daniels via a police information sharing website. The booking information indicated Daniels was arrested for drug trafficking on February 7, 1992, and that the booking photograph of Daniels was taken on January 17, 1997. The booking information provided Daniels biographical information.[5]

On June 18, 2009, Detective Delpizzo obtained a driver's license photograph and biographical information for the North Carolina driver's license number corresponding to the information from the Public Works Commission from the North Carolina Department of Motor Vehicles. The file shows that the listed driver's license corresponds with the name Orvin

---

[4] The affidavit included a social security number, date of birth, driver's license number and home phone number.

[5] The affidavit included a date of birth, weight, height, North Carolina Drivers License Number, FBI Number and home address, located in Winston-Salem (Forsyth County), North Carolina. The information did not match the biographical information from the Public Works Commission.

Emmanuel Phillips of 3230 Rogers Drive, Fayetteville North Carolina. Detective Delpizzo then compared the Forsyth County Sheriff's Office photograph of Daniels and the North Carolina Department of Motor Vehicles photograph of Phillips and determined that they are the same person.

On June 22, 2009, Detective Delpizzo obtained a computerized criminal history report for Daniels which shows that he was charged with trafficking in cocaine on February 7, 1992 by the Winston-Salem Police Department. The report details that Daniels was convicted of possession with intent to sell and deliver cocaine in Forsyth County Superior Court on March 11, 1997. The computerized criminal history report also lists the name Newton Shearer as a alias that Daniels has used.

On June 22, 2009, Detective Delpizzo contacted Special Agent R. Colston of United States Immigration and Customs Enforcement who advised Detective Delpizzo that Daniels' true name is Newton Shearer. Special Agent Colston also advised that the United States Immigration and Naturalization Services declared Shearer an Armed Drug trafficker and deported him from the United States in 1997.

On June 22, 2009, Delpizzo began surveillance at 3230 Rogers Drive in Fayetteville, North Carolina. He observed a burgundy color Chevrolet sedan parked in the driveway of the residence which displayed the North Carolina registration plate XWA-3090. Delpizzo conducted a check of the vehicle registration through the North Carolina Department of Motor Vehicles database which showed the vehicle was a 1997 Chevrolet Lumina registered to Orvin Emmanuel Phillips at 3230 Rogers Drive.

At various times between June 22, 2009, and June 25, 2009, Detective Delpizzo conducted surveillance of 3230 Rogers Drive. On June 25, 2009, Detective Delpizzo observed a

4

white Toyota pickup truck displaying North Carolina registration plate YWC-2664. North Carolina Department of Motor Vehicle files show that the registered owner of the vehicle is Orvin Phillips of 3230 Rogers Drive. DMV files also show that Phillips has two other vehicles registered other than the Toyota pickup and the Chevrolet Lumina.

On June 22, 2009, Detective Delpizzo received from Sergeant Johnson, of the Fayetteville Police Department's Narcotics Interdiction Unit, a copy of the debriefing notes of a subject arrested on April 29, 2009.[6] The subject was determined to be cooperative and advised that the subject knew a marijuana dealer by the name "Tony" that also used the name Orvin Phillips. The subject advised further that "Tony" lived at 3230 Rogers Drive and that the subject had observed marijuana and trash bags of US currency in the residence. The subject also stated that "Tony" had a shotgun and a 9 millimeter pistol in the residence.

The warrant application sought approval to search for and seize "any and all documents pertaining to the true identity, immigration status, evidence pertaining to identity theft, and any and all evidence pertaining to violations of North Carolina General Statutes." The warrant indicated further that items to be seized included "[a]ny documents, deeds, wills, digital or analog recording media, cellular telephones, and communication records pertaining to the identity of Newton Shearer a.k.a. Christopher Daniels a.k.a. Orvin Phillips." The warrant sought evidence of the following alleged crimes: "continuing criminal enterprise (GS14-7.20), obtaining property by false pretenses (GS14-100), possession or manufacture of fraudulent identification (GS14-100.1), identity theft (GS14-113.20), forgery and counterfeiting of instruments

---

[6] Detective Delpizzo refers to this informant in his hearing testimony as confidential informant #1. Tr.p. 33.

5

(GS14-119), possession of counterfeit instruments (GS 14-119)." The application also sought approval to search Defendant's vehicles.

B.  Execution of the Search Warrant

On June 29, 2009, Detective Delpizzo presented the search warrant and affidavit to a North Carolina magistrate, who approved the warrant the same day. Tr. p.14. Detective Delpizzo returned to the police department with the warrant to brief the Emergency Response Team in preparation for execution of the search warrant. *Id.* at 15. Meanwhile, Sergeant Bahler began conducting surveillance at 3230 Rogers Drive. Prior to the search, Sergeant Bahler notified Detective Delpizzo that Defendant had departed the residence in a white Toyota pickup truck. *Id.* at 15, 16. The Emergency Response Team delayed the search for approximately fifteen minutes, then conducted a knock and announcement, ultimately entering the residence. There were no occupants in the residence.

Once the residence was cleared by the Emergency Response Team and deemed safe, Detective Delpizzo entered the residence. Upon entering the master bedroom, Detective Delpizzo observed the butt of a shotgun in the corner sticking out over the top of a dresser. *Id.* at 17, 39. Detective Delpizzo then called Sergeant Bahler, who was observing Defendant doing yard work two blocks from the residence. Detective Delpizzo informed Sergeant Bahler that Detective Delpizzo was going to arrest Defendant for possession of a firearm, and he instructed Sergeant Bahler to detain Defendant. Sergeant Bahler detained Defendant and arranged for the police to transport him back to 3230 Rogers Drive. Sergeant Bahler drove Defendant's Toyota pickup truck back to Defendant's residence, during which he observed a bag of marijuana on the transmission hump in the front cab area of the vehicle. *Id.* at 18.

6

When Defendant arrived at Rogers Drive he was placed in a chair outside the residence. *Id.* at 18. Detective Delpizzo read Defendant the contents of the search warrant and provided him a copy of the search warrant.

During the search of the residence Detective Delpizzo discovered an unloaded .45 caliber automatic handgun on the bed of the master bedroom under a pair of pajama bottoms. *Id.* at 18, 39. Located on the top of the bedroom dresser and within a dresser drawer Detective Delpizzo found several documents including a birth certificate from the United States Virgin Islands, several bank statements, credit cards, utility bills and vehicle registrations, all in the name of Orvin Phillips. *Id.* at 18, 35, 36. Delpizzo located a social security card in the name of Orvin Phillips either in Defendant's wallet or in the bedroom dresser. *Id.* at 19, 35. Located behind the bedroom dresser, Detective Delpizzo discovered a zip-loc bag containing two or three smaller bags of marijuana. *Id.* at 19. Detective Delpizzo also found a box of ammunition on the bedroom floor on the opposite side of the bed, a stack of US currency less than $1,000 and a jar of change. *Id.* at 20, 39. Two other boxes of ammunition were located in the dresser. *Id.* at 39.

Several other detectives were involved in the search of the residence. *Id.* at 19. Detective Don Bell searched a crawl space above the ceiling and located loose marijuana. Detective Pedro Orellano searched the kitchen and located in the cabinets a trash bag containing marijuana residue. Detective Orellano discovered two digital scales in the cupboards above the kitchen counter. *Id.* at 20, 38, 39.

After searching the residence, the detectives turned their attention to the burgundy Chevrolet Lumina parked in the driveway. *Id.* at 36. The detectives discovered approximately eight pounds of marijuana in the trunk on the vehicle. *Id.* at 21. Law enforcement seized the identification, narcotics, firearm and ammunition evidence.

7

C. <u>Testimony Regarding the Confidential Informants</u>

Detective Delpizzo was provided debriefing notes from Sergeant Johnson of an interview with CI#1 on April 29, 2009, following CI#1's arrest.[7] *Id.* at 9. CI#1 provided information that a person by the name of Antonio Daniels lived at 3230 Rogers Drive and that Daniels used the alias of Orvin Phillips. CI#1 indicated further that Daniels was a deported felon, had a 9mm handgun and sawed-off shot gun and was selling marijuana. *Id.* at 9-10. Detective Delpizzo did not interview CI#1 nor had he used this informant in previous cases. Although Sergeant Johnson told Detective Delpizzo that CI#1 was reliable and credible, Detective Delpizzo does not know if CI#1's reliability has been tested by Johnson or any other member of law enforcement. *Id.* at 33.

According to Detective Delpizzo, CI#2 had told Bahler that Antonio Daniels resides at 3230 Rogers Drive and was using an alias of Orvin Phillips. *Id.* at 3-4. CI#2 said there was marijuana and guns inside the residence and that Daniels was a previously-deported felon as a result of a narcotics conviction. *Id.* Detective Delpizzo interviewed CI#2 on June 17, 2009, twelve days prior to the search. *Id.* at 8. CI#2 told Detective Delpizzo that she had been at the residence ten to fifteen times and observed marijuana in trash bags or currency in trash bags. *Id.* CI#2 indicated further that, at the time of her interview with Detective Delpizzo, that she had been at 3230 Rogers Drive within the week. *Id.* at 9. CI#2 had not been involved in any cases with Detective Delpizzo prior to this occasion and Detective Delpizzo was not aware if the informant had been used by law enforcement in the past. *Id.* at 31.

---

[7] The parties' briefing refers to this informant as confidential informant #2.

8

## DISCUSSION[8]

Defendant seeks the suppression of all evidence seized from Defendant's residence on June 29, 2010 on the grounds that there was not sufficient probable cause to support the magistrate's decision to issue the search warrant. Supp. Mot. to Suppress Evidence & Mem. of Law. [DE-40]. In particular, Defendant contends the information contained in the search warrant application and affidavit is vague and stale. Mot. to Suppress and Mem. of Law. [DE-23, 24] at 3. Defendant faults Detective Delpizzo's reliance on two confidential informants. With respect to reliance on CI#1, Defendant argues the affidavit fails to indicate a time-frame regarding the alleged activities witnessed at Defendant's residence. Defendant argues the information provided by CI#2 is stale because it is two-months old. [DE-23 at 5]. Moreover, according to Defendant, neither informant appears to have been previously relied upon nor is it indicated in the search warrant affidavit whether either informant had provided reliable case information in the past. Rather, according to Defendant, the search warrant affidavit describes the informants only as "cooperative". Defendant contends that Detective Delpizzo failed to assess each informant's credibility, reliability or propensity to be truthful. Finally, alternatively, Defendant contends that Detective Delpizzo's corroboration of the informants' statements is limited to a finding of probable cause with respect to evidence of Defendant's identity, immigration status and document fraud, and does not extend to a search for illegal narcotics,

---

[8] Before addressing the substantive issues, the court must first consider the weight it, if any, this court should afford the hearing testimony. After observing Delpizzo's and Cartwell's testimony at the hearing and assessing each of their demeanor on the witness stand, under direct and cross examinations, the court finds their testimony to be credible and consistent. *See United States v. Stevenson*, 396 F.3d 538, 542-43 (4th Cir. 2005) (noting that assessing the credibility of witnesses is the province of the district court). While defense counsel cross-examined the government's witness during the suppression hearing, the government was not accorded an opportunity to cross-examine the Defendant. Defendant chose not to testify at the suppression hearing.

9

firearms or ammunition. [DE-40 at 5]. Defendant contends the government's warrant to search for evidence of identity crimes was merely a pretext to conduct a search for illegal drug activity, for which the government was unable to establish probable cause.

> A magistrate presented with a search warrant application must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ..., including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983); *accord Ornelas v. United States*, 517 U.S. 690, 696 (1996) (probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found").[9] Sufficient information must be presented to the magistrate to allow for the exercise of independent judgment; the magistrate cannot simply ratify the conclusions of others. *Gates*, 462 U.S. at 239. In reviewing a magistrate's probable cause determination, the court must determine whether the magistrate had a substantial basis for the decision. *Id.* at 236. The court accords the magistrate's decision "great deference," and will not invalidate a warrant "by interpreting [an] affidavi[t] in a hypertechnical, rather than a commonsense, manner." *Id.* at 236 (citations omitted). When reviewing the probable cause supporting the search warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant. *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

---

[9] The issue in *Gates* was whether a search warrant based on a partially corroborated anonymous tip had been properly issued. In upholding the search, the Supreme Court abandoned the "two-pronged test" for assessing the reliability of an informant's tip (*see Aguilar v. Texas*, 378 U.S. 108, 114 (1964) and *Spinelli v. United States*, 393 U.S. 410, 416 (1969) (requiring disclosure in affidavit of circumstances indicating informant's (1) reliability or credibility and (2) basis of knowledge)), in favor of a totality of the circumstances approach. *Gates*, 462 U.S. at 238.

10

An important factor in determining whether an informant's report establishes probable cause is the degree to which it is corroborated. *Gates*, 462 U.S. at 241; *United States v. Miller*, 925 F.2d 695, 698 (4th Cir. 1991). Although the informant's veracity, reliability and basis of knowledge are relevant, they are no longer independent requirements. *Gates*, 462 U.S. at 230. Rather, the court will determine from "a totality of the circumstances" whether the information supporting the search warrant is reliable. To that end, the corroboration of "innocent facts" provided by the informant may be sufficient to establish reliability; it is not necessary that there be corroboration of the criminal conduct itself. *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir.1993) (citing *Alabama v. White*, 496 U.S. 325, 331 (1990)). Furthermore, "an officer's report in his affidavit of the target's prior criminal activity or record is clearly material to the probable cause determination." *United States v. Bynum*, 293 F.3d 192, 197-98 (4th Cir. 2002); *accord Miller*, 925 F.2d at 699-700 (informant's tip corroborated, in part, because "officer knew that [the defendant] had been involved in illegal narcotics in the past" based on prior arrest).

"[T]ime is also a crucial element of probable cause. A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant so as to justify a finding of probable cause at that time." *United States v. McCall*, 740 F.2d 1331, 1335-36 (4th Cir. 1984). However, "[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. . . . Rather, [the court] must look at all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id.* at 1336. "The information in the warrant is not stale if the evidence sought is 'intrinsically likely to remain at the location where it was originally observed.'" *Id.* at 1337. The ultimate concern of the court when confronted with an issue of

11

staleness is whether "the facts alleged in the warrant furnish probable cause to believe, at the time the search was actually conducted, that evidence of criminal activity was located at the premises searched." *Id.* at 1336.

A. <u>The information provided by the confidential informants regarding Defendant's identity and immigration status was corroborated and therefore was not stale.</u>

To the extent Defendant asserts the statements of the confidential informants regarding Defendant's fraudulent identity and immigration status were stale and unreliable, the information each provided was corroborated by Detective Delpizzo. Through his use of a police computer database, Detective Delpizzo confirmed that Daniels and Phillips were the same individual and that this individual had been convicted of drug charges. Detective Delpizzo subsequently contacted ICE and verified that the Daniels was an alias for Shearer and that Defendant had been convicted of drug charges and deported. The corroboration of an informant's report, even of innocent information, tends to indicate that other aspects of the report are also correct. *See Gates*, 462 U.S. at 244. ([A]n informant [who] is right about some things ...[is] more probably right about other facts."). The information regarding Defendant's identity is not stale as Detective Delpizzo's corroboration of Defendant's alias tying Defendant to 3230 Rogers Drive confirmed the information provided by the informants regarding Defendant's identity and immigration status and made it likely that such information would be discovered. *See McCall*, 740 F.2d at 1336.

The search warrant sought and obtained permission to conduct a search for documents regarding Defendant's identity, immigration status and commission of identity rimes. There was sufficient probable cause set forth in the search warrant affidavit that Defendant's residence would contain evidence of his alleged identity and immigration crimes. Defendant had twice

12

staleness is whether "the facts alleged in the warrant furnish probable cause to believe, at the time the search was actually conducted, that evidence of criminal activity was located at the premises searched." *Id.* at 1336.

A. <u>The information provided by the confidential informants regarding Defendant's identity and immigration status was corroborated and therefore was not stale.</u>

To the extent Defendant asserts the statements of the confidential informants regarding Defendant's fraudulent identity and immigration status were stale and unreliable, the information each provided was corroborated by Detective Delpizzo. Through his use of a police computer database, Detective Delpizzo confirmed that Daniels and Phillips were the same individual and that this individual had been convicted of drug charges. Detective Delpizzo subsequently contacted ICE and verified that the Daniels was an alias for Shearer and that Defendant had been convicted of drug charges and deported. The corroboration of an informant's report, even of innocent information, tends to indicate that other aspects of the report are also correct. *See Gates*, 462 U.S. at 244. ([A]n informant [who] is right about some things ...[is] more probably right about other facts."). The information regarding Defendant's identity is not stale as Detective Delpizzo's corroboration of Defendant's alias tying Defendant to 3230 Rogers Drive confirmed the information provided by the informants regarding Defendant's identity and immigration status and made it likely that such information would be discovered. *See McCall*, 740 F.2d at 1336.

The search warrant sought and obtained permission to conduct a search for documents regarding Defendant's identity, immigration status and commission of identity rimes. There was sufficient probable cause set forth in the search warrant affidavit that Defendant's residence would contain evidence of his alleged identity and immigration crimes. Defendant had twice

12

been deported and twice convicted of crimes involving narcotics. Two corroborated informants reported Defendant operated under an alias, a name and address to which DMV records showed he had registered automobiles. Public utility records demonstrated the further use of an alias to register services to the residence. Finally, surveillance indicated the vehicles registered to Defendant under an alias were at the residence. Based on the totality of the circumstances, there was sufficient probable cause to believe that documents of Defendant Orvin Philips would be found at the residence. *See Gates*, 462 at 238 (abandoning the *Aguilar/Spinelli* two-part test for assessing reliability of informant information to support probable cause).

B.  The seizure of the firearms, ammunition and narcotics evidence was not unlawful.

Defendant next contends the search of Defendant's residence exceeded the scope of the warrant. In particular, Defendant contends that the search warrant was limited to a search for items related to Defendant's fraudulent identity and immigration status, and that the seizure of firearms, ammunition and drugs was outside the scope of the search warrant. The government responds that these items were lawfully seized in plain view in the course of executing a valid search warrant.

In order for a search to pass constitutional muster, there must be a nexus between the criminal conduct alleged in the search warrant, the items to be seized and the place to be searched. *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988). The nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inference of where one would likely keep such evidence. *Id.* The plain view doctrine authorizes a warrantless seizure of incriminating evidence under circumstances where (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a

13

lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent. *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997).

The criminal conduct alleged in the search warrant at issue included obtaining property by false pretenses, possession or manufacturing false identification, identity theft, forgery and counterfeiting and possession of counterfeit instruments. The warrant sought any and all documents pertaining to Defendant's true identity, immigration status and evidence pertaining to identity theft and any and all documents pertaining to violations of the North Carolina General Statutes.[10] Based on the criminal conduct alleged in the warrant and the nature of the evidence sought, a proper nexus may be drawn for a search both of Defendant's home and automobiles. It is reasonable to expect that documents indicating one's identification will be located in one's home and automobile. Detective Delpizzo testified that he saw the butt of a shotgun over the top of the bedroom dresser and ammunition on the bedroom floor. Detective Delpizzo was lawfully present in the bedroom pursuant to the search warrant; the shotgun and ammunition were in plain view and their incriminating character was immediately apparent. Detective Delpizzo testified further that while searching the bedroom he discovered a handgun on the bed under a pair of pajama bottoms. Located behind the bedroom dresser Detective Delpizzo also discovered bags of marijuana. Detective Don Bell discovered marijuana in a ceiling crawl space. Detective Orellano discovered marijuana and a pair of digital scales in the kitchen cabinets. Marijuana was also discovered in the front cab area of Defendant's Toyota pickup truck and in the trunk of

---

[10] The government does not argue that the firearms, ammunition and narcotics evidence were properly seized under the warrant allowing for search of evidence "pertaining to violations of the North Carolina General Statutes." *See e.g., United States v. Stefonek*, 179 F.3d 1030, 1032-33 (7th Cir. 1999) (explaining items to be seized must be described with particularity; simply stating "evidence of a crime" is not sufficient).

14

the Chevrolet Lumina parked in the driveway. In each of these instances, the police detectives were searching places where it is reasonable to expect that items within the scope of the search warrant may be kept.[11] In each case the unlawful nature of the item actually discovered was immediately apparent. Seizure of these items was therefore appropriate as a warrantless seizure. *See United States v. Uzenski*, 434 F.3d 690, 707 (4th Cir. 2006) (explaining where the police have original justification for intruding in a person's private property, they can extend that justification to items whose incriminating nature is apparent).

C.     Good faith Exception

Defendant contends the good faith exception does not apply under the circumstances as the police were in reality conducting a narcotics investigation and simply lacked the probable cause for a search warrant. [DE-40 at 5]. Defendant asserts as well that the search was converted to an immigration investigation, which was equally lacking. *Id.*

Under the good faith exception to the search warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if "the officers were dishonest or reckless in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Lalor*, 996 F.2d at 1583 (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)); *United States v. Bynum*, 293 F.3d 192, 197-99 (4th Cir. 2002) (applying the good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence). The exception applies unless "a reasonably well-trained officer ... [should] have known the

---

[11] The search of Defendant's vehicle was also conducted in an effort to obtain evidence regarding the allegation that Defendant had obtained North Carolina vehicle registration and license plates from the DMV under the false name or Orvin Phillips. Tr. pp. 25-26.

15

search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 293 n.23. The exception does not apply under circumstances where (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard for the truth, (2) the magistrate acted as a "rubber stamp" of the officers and abandoned his detached and neutral judicial role, (3) the warrant affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 293; *Bynum*, 293 F.3d at 195; *see also Wilhelm*, 80 F.3d 116, 121-22 (4th Cir. 1996) (good faith exception inapplicable where affidavit was 'bare bones' and "state magistrate could not have acted as other than a "rubber stamp" in approving such an affidavit").

Defendant has taken the position that the third set of circumstances applies in this case to preclude the good faith exception from saving the search of Defendant's residence. Even if the search warrant were invalidated in this case, the warrant affidavit is not so lacking in probable cause that the officer's reliance on it was objectively unreasonable. Through his own investigation using multiple computer databases, police, DMV and public utility records and in cooperation with other law enforcement agencies, Detective Delpizzo effectively corroborated information from confidential informants regarding Defendant's use of an alias, prior drug convictions and immigration status, as well as Defendant's connection to the residence at 3230 Rogers Drive. Detective Delpizzo's significant corroboration removes the search warrant in this case from one of "bare bones" approved by a magistrate acting as a mere "rubber stamp", to one on which officers could reasonably rely. *See Bynum*, 293 F.3d at 197 (good faith exception applies in part because explicit corroboration of possible illegal activity and search site);

*compare Wilhelm*, 80 F.3d at 121 (good faith exception inapplicable where only corroboration was anonymous tipster's directions to defendant's house which were available to almost anyone and did not reveal criminal activities).

## CONCLUSION

For the reasons set forth above, the court RECOMMENDS that Defendant's motion to suppress be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation. Additionally, except upon grounds of plain error, failure to timely file written objections shall bar a party from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 21st day of January, 2011.

*[signature]*
Robert B. Jones, Jr.
United States Magistrate Judge